<pre>
 1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - X
 3
     JOSE DE JESUS ROQUE LOPEZ    :
 4   and BONIFACIO BARTOLO JUSTO,       18-CV-5639(PKC)

 5           Plaintiffs,        :
                                       United States Courthouse
 6        - against -           :      Brooklyn, New York

 7   PRONTO PIZZA LLC, et al.,   :
                                       July 10, 2019
 8           Defendants.        :      11:00 o'clock a.m.

 9   - - - - - - - - - - - - - - X

10
                   TRANSCRIPT OF ORAL ARGUMENT
11            BEFORE THE HONORABLE PAMELA K. CHEN
                 UNITED STATES DISTRICT JUDGE.
12

13   APPEARANCES:

14
     For the Plaintiffs:         MICHAEL FAILLACE & ASSOCIATES
15                               60 East 42nd Street Ste 4510
                                 New York, NY 10165
16
                                 BY: PAUL HERSHAN, ESQ.
17

18   For the Defendants:         MANATT, PHELPS & PHILLIPS, LLP
                                 7 Times Square
19                               New York, NY 10036

20                               BY: VINCENT C. PAPA, ESQ.
                                     BRIAN J. TUROFF, ESQ.
21

22   Court Reporter:            Charleane M. Heading
                                225 Cadman Plaza East
23                              Brooklyn, New York
                                (718) 613-2643
24
     Proceedings recorded by mechanical stenography, transcript
25   produced by computer-aided transcription.
</pre>

1    THE CLERK:  Civil cause for oral argument.  Docket
2  18-CV-5639.  Lopez, et al. versus Pronto Pizza 02 LLC, et al.
3    Will the parties please state their appearances for
4  the record.
5    MR. HERSHAN:  For the plaintiffs, for Michael
6  Faillace & Associates, Paul Hershan.  Good morning,
7  Your Honor.
8    THE COURT:  Good morning.
9    MR. PAPA:  Good morning, Your Honor.  Vincent Papa
10  from Manatt Phelps & Phillips for all the defendants.
11    THE COURT:  Good morning.
12    MR. TUROFF:  Good morning, Judge.  Brian Turoff,
13  also from Manatt Phelps & Phillips, for the defendants.
14    THE COURT:  Good morning, everyone.
15    So we are here for the motion on partial motion to
16  dismiss of the defendants and in their motion, they seek to
17  dismiss the claims against two of the three individual
18  defendants Dashnor Miftari and Besnik Stevie Miftari who I
19  gather goes by the name of Stevie and then also to dismiss the
20  claim for equipment costs raised by one of the plaintiffs
21  Mr. Jesus Roque Lopez.
22    So I will allow the parties to elaborate on their
23  arguments if you'd like, though these issues are relatively
24  straightforward and obviously we are amenable to expedited
25  briefing as I directed.

1    So if you would like to be heard further, Mr. Turoff

2 or Mr. Papa, on your motion, feel free.  If it helps you, I

3 will tell you that I am not inclined to grant the motions to

4 dismiss as to the two individual owners.  The allegations that

5 you say are boilerplate are not as boilerplate, I think, as

6 you contend and at this point, I think they do suffice to at

7 least create a reasonable inference that these two individuals

8 were owners.

9    I take into consideration the common sense view of

10 this case which is this is a small, seemingly family-owned

11 business involving these three relatives and that logically,

12 the one as to whom the strongest case can be made about a

13 motion to dismiss, Dash Miftari, is a self proclaimed owner

14 and while he may not be there day to day managing the

15 businesses like the other two, I certainly think it is

16 reasonable to infer that he does qualify as an employer based

17 on his own statements and some of his actions as alleged by

18 the plaintiff.

19    So perhaps with that as an introduction, you can go

20 ahead and argue whatever else you think is important.

21    MR. PAPA:  Okay, Your Honor.  Would you like me to

22 use the lectern?

23    THE COURT:  No.  No.  You can stay where you are.

24 You can either sit or stand, however you're most comfortable.

25    MR. PAPA:  Thank you, Your Honor.

1    So as you summarize, Your Honor, the defendants are

2 seeking dismissal of all the claims as interposed against the

3 individual defendants, Stevie Miftari and Dash Miftari, and

4 complete dismissal of Count Eight which is the tools of the

5 trade claim.

6    As you were alluding to, only employers may be held

7 liable under New York Labor Law and FLSA violations and as

8 Your Honor is well aware, in the Second Circuit, in the Carter

9 versus Dutchess case, the Second Circuit articulated the four

10 factor test that is grounded in the economic realities of the

11 situation.  Very quickly, those factors are, of course,

12 whether the alleged employer had the power to hire and fire

13 employees, whether they supervised and controlled employee

14 work schedules or controlled the conditions of their

15 employment, whether they determined the rate and method of pay

16 and whether they maintained employment records.

17    THE COURT:  A little bit slower and bear in mind,

18 you have a court reporter recording you.

19    MR. PAPA:  My apologies, Your Honor.

20    Now, it is routinely held in this Circuit that

21 simply reciting these factors is not enough to state a claim.

22 For example, we cite several cases in our papers.  Your Honor,

23 we would like to direct you to Chen versus Hunan Manor and

24 Lin --

25    THE COURT:  The first is S-H-I, M-E-N-G, Chen.

1        MR. PAPA:  Yes.

2        THE COURT:  Versus Hunan Manor Enterprise, Inc.

3   Just so it's clear on the record.

4        MR. PAPA:  Yes.

5        THE COURT:  Okay.  Go ahead.

6        MR. PAPA:  Also Lin versus Benihana and the Apolinar

7   case.

8        THE COURT:  A-P-O-L-I-N-A-R.  That's the one you're

9   referring to?

10       MR. PAPA:  Yes, that's correct.  Thank you,

11  Your Honor.

12       And in those cases, as we elaborate on in our

13  papers, courts dismissed in almost analogous circumstances

14  where the allegations are just vague and conclusory

15  resuscitations, they are resuscitations of the Carter factors.

16       As it relates to Dash Miftari, as you know,

17  Your Honor, the plaintiff has only alleged that he came to the

18  business two to three times a week and issued some

19  unidentified orders to the plaintiffs, but these allegations

20  don't elaborate -- there's nothing more than an allegation

21  that's vague and conclusory and related only to the second

22  Carter factor.  And in particular, that allegation does

23  nothing to add any detail but what types of orders or what

24  businesses that he came to and what order -- who he was

25  directing these orders to, in particular, because, remember,

1  there's two plaintiffs here, and courts in the Circuit and, in

2  particular, in the MacIntyre case, the court found where you

3  only allege a single Carter factor in a conclusory fashion,

4  that type of deficient pleading warrants dismissal.

5      Moving to the second individual defendant,

6  Your Honor, Stevie Miftari, those allegations are equally thin

7  and conclusory as well.  They allege that he hired plaintiffs,

8  allegedly set pay rates and issued, again, some unidentified

9  orders to some plaintiff we don't know which one and we don't

10  know what the orders were, and these vague allegations are

11  nothing more than conclusions couched as factual allegations

12  which is precisely the type of pleading that this court found

13  was insufficient in the Coley v. Vannguard case in a 2014

14  opinion.

15      THE COURT:  Can I stop you there?  You know that's

16  my opinion.

17      MR. PAPA:  Yes, Your Honor.

18      THE COURT:  But the facts there are so vastly

19  different.  I mean, I know you belittled the argument that

20  Coley involved a board member, but that was a significant

21  factor because that was someone who didn't have any day-to-day

22  operational management of the employees or of the overall

23  business.  There was, in fact, an executive director for one

24  of the Vannguard organizations and the person as to whom I did

25  grant the dismissal really was a board member and to me,

1  that's functionally and very concretely different than what

2  we're talking about here which are three purported owners and

3  managers of a business, two of whom at least were there day to

4  day and one of whom you just, as you just mentioned, is

5  alleged to have been there two to three times a week.  I think

6  we have a vastly different situation.  So Coley in my mind

7  really isn't applicable here but go ahead.

8          MR. PAPA:  All right.  Well, I guess drawing on

9  Coley or just pausing on Coley for a second, I think there,

10  Your Honor, and in both instances, the plaintiffs fail to

11  allege how particularly Dash actually controlled the

12  day-to-day operations and actually had some bearing on the

13  plaintiffs' employment.  They don't really allege how they,

14  how either Dash or Stevie specifically controlled and

15  supervised their employment.

16          We'd like to remind, Your Honor, that this, that the

17  first amended complaint was filed in response to our

18  February 1st letter in which we exposed the deficiencies in

19  their pleadings.  So in their second bite at the apple,

20  Your Honor, that was all that they were able to come back with

21  in way of allegations.  Both Dash and Stevie which are pretty

22  conclusory and, Your Honor, we would also like to, you know,

23  point out the fact that these defendant businesses are

24  pizzerias.  They're not, they're not conglomerates or they're

25  not corporations like in Vannguard where perhaps some sort of,

1    you know, further factual investigation or time was needed to

2    sort of develop these allegations.  They would either know or

3    they wouldn't whether or not Stevie and Dash, you know,

4    actually controlled their employment and in this case, it's

5    clear from the pleadings and the amended complaint that they

6    didn't.

7            THE COURT:  But don't you think the argument cuts

8    the other way?  Because that's my view of it too, that these

9    are pizza parlors where the day-to-day operations are being

10   run by at least these two individuals who are also owners and

11   presumptively related to each other.  So you're talking about

12   a situation where the plaintiffs are working day-to-day, side

13   by side with these individuals, and they say this person hired

14   me, this person set my pay rates, this person told me how to

15   perform my job, this person could fire me or discipline me.

16           Yes, I understand that you think that that just

17   mirrors what is required under the test, but when you are

18   talking about individuals who aren't in some large

19   conglomeration or some corporate entity, who are in a pizza

20   parlor, it strikes me that this is what they ought to be

21   saying.  I agree with you that they could have particularized

22   it.  So rather than say, for example, the person hired me,

23   they can say, Oh, I met with Stevie Miftari on X date and he

24   interviewed me and then he gave me a job lo these many years

25   ago because I know both of them have been working there since

1   2012, admittedly, there could be more meat on this complaint,

2   but under the circumstances, I think it would be irresponsible

3   of me simply to dismiss it because there could have been a

4   better pleading job when it seems apparent to me that these

5   plaintiffs do know these defendants and these are the

6   defendants or these are the employers who are actually working

7   with them day to day who own the pizza shop and who tell them

8   what to do and who clearly have the ability to hire, fire or

9   give them raises or not.

10          Could they have put more meat on this?  For sure.

11  Can I make a reasonable inference that these three individuals

12  are all owners and employers, owners of the shops and

13  employers of these individuals?  Yes.  I mean, the standard is

14  relatively forgiving at this point and it would be very much

15  against my general practice to dismiss the claims against

16  these individuals at this point despite what I think you

17  accurately point out is not optimal pleading, but go ahead.

18          You look like you want to say something, Mr. Papa.

19  Oh, you're Mr. Turoff.

20          MR. TUROFF:  Judge, I was going to say I think

21  that's sort of the whole idea.  What you have here, you're

22  right, these are two guys who are in the pizza place every

23  day, every day, and it's a pizza place.  It's probably maybe

24  not bigger than this area of the room.

25          THE COURT:  You're saying why can't they be more

1  particular?

2      MR. TUROFF:  Well, obviously, on that point, I mean,

3  isn't that the whole idea, that if you are supposed to plead

4  in a certain manner and have a certain degree of specificity,

5  that, ultimately, you are supposed to have that?  And this is

6  a circumstance where this is their second try.

7      So what you have is two guys who, by their own

8  admission, have been going to this pizza place for years,

9  every day.  They go every single day.  So you would assume, by

10  definition, they know who goes in and comes out.  And after

11  two tries, the best they can do is come up with two

12  allegations, maybe three allegations against Dash Miftari?

13      I would actually suggest, again, for two guys, know

14  the comings and goings --

15      THE COURT:  Slowly, for the court reporter.

16      MR. TUROFF:  Sorry.

17      -- and by the way, have made allegations that are

18  much more specific as opposed to a different defendant which

19  is Kash Miftari, I think that the whole idea that they were

20  able to draw that distinction and say, Hey, this guy is here

21  all the time and this guy does all this stuff, and after years

22  being there, in a space this big, I would imagine that all of

23  you sitting here know who comes in and who goes out and you

24  could tell us what those people do.  After two separate bites

25  of the apple, after coming up with two allegations against

1  Dash Miftari, I would think under that circumstance, look, I

2  understand that certainly, I understand --

3          THE COURT:  Stop.  Stop.  Stop.  Again, please be

4  mindful of our court reporter.

5          MR. TUROFF:  Sorry.  I'm slowing down only on the

6  important parts.

7          But, ultimately, again, I think that it's important.

8  I understand certainly that caution is important and,

9  obviously, we wouldn't suggest that the Court be hasty as to

10  who should be in and who should be out, but I think there's

11  some fairly clear inferences to be drawn, in particular, as it

12  relates to the distinction between what is being alleged for

13  Kash, who you'll note we are not suggesting should be released

14  at this stage, as opposed, for example, to Dash, again, under

15  a circumstance where they've had two chances to actually

16  articulate more and had the opportunity to use our motion as

17  their road map to improve it and have still failed to do that.

18          THE COURT:  Okay.  Fair enough.  I do understand

19  your arguments.

20          I will hear from you, Mr. Hershan.  I mean, as you

21  have heard, the defense makes some good arguments about the

22  fact that more should be expected of these plaintiffs in terms

23  of the allegations and the particularity of these allegations

24  given the close relationship they allegedly have with these

25  three defendants.

1        Now, with respect to Dash, I understand that the

2   allegation is that he was only there two to three times a week

3   and per force, the allegations to him would be limited but,

4   nevertheless, you do allege that he issued orders.  So the

5   question becomes what more can your clients say which, quite

6   frankly, should have been in the complaint about these

7   individuals.

8        MR. HERSHAN:  Your point is well taken that we could

9   do done a better job particularizing the nature of this

10  complaint but I do think as it's amended, it does, under our

11  legal requirements, a sufficient job of making particular

12  allegations as to each defendant and sufficiently alleging

13  that each of these defendants were employers of these

14  plaintiffs.

15       We do not need to include specific evidence in these

16  complaints and I think we have sufficiently alleged all three

17  of these individual defendants ordered us at this pizzeria,

18  some of them hired us.  As it particularly pertains to Dash,

19  he's there two to three times per week.  He says, I can tell

20  you guys what to do, in other words, and if he's issuing

21  orders to a cook and a food preparer in a pizzeria, I think

22  it's more than reasonable for Your Honor to infer from that

23  description in paragraph ten of the amended complaint, that

24  he's telling them, Guys, I need you to make X amount of

25  pizzas.

1    I think that's entirely reasonable for you to infer

2 that he's giving orders of that nature at the pizzeria based

3 on the four corners of this complaint.  I think it's

4 sufficiently alleged as to him that you can reasonably infer

5 that he was an employer of these plaintiffs.

6    THE COURT:  Let me say this.  As I expressed

7 earlier, I don't have much doubt that the allegations, that

8 there are allegations that are -- let me try to put it -- that

9 the facts actually warrant charging or naming these three

10 individuals, but this is more about policing the practice to

11 some extent because I think your takeaway from this should be

12 that in the area of FLSA, and the labor law cases, you do need

13 to be more particular so as to avoid at least these kinds of

14 motions which the defendants are technically correct about

15 because there's a fine line between parroting the words of the

16 statute and actually making a factual allegation.

17    As I said before, even to say this person hired me,

18 you can very easily provide some detail that would support

19 that claim because, otherwise, it feels and sounds and looks

20 like a boilerplate allegation that simply shadows the

21 statutory language or the economic realities test.  While I

22 understand your position that it's enough, I think you should

23 take away from it that there should be more next time because

24 there is no reason to have a motion filed if, in fact, as I

25 believe to be true and as I infer to be true, these plaintiffs

1  do have more specific information that would support the

2  employer status of each of these individuals.  With respect to

3  Dash, I think there is for sure the closest question, but

4  still I think it suffices but just barely, I would say.

5          So I want you to take away and take back to your

6  firm because I do think you practice in this area a lot that

7  it would behoove you, especially when you have individuals who

8  were working there for six years or more, that they should be

9  able to come up with some specific examples and you do not

10  have to have a laundry list.  You just have to have enough to

11  fend off a motion and to give the judge some comfort that

12  these are, in fact, the employers who were making all of the

13  key decisions under the economic realities test.  Okay?

14          MR. HERSHAN:  Judge, I assure you, I'll relay that

15  message.

16          And then just to address the final point here,

17  plaintiffs will concede as to equipment costs for Plaintiff

18  Bartolo.  That plaintiff did not have a claim for recovery of

19  equipment costs so we would concede dismissal as to that

20  plaintiff.  It's Plaintiff Bartolo, not Plaintiff Lopez.

21          THE COURT:  My apologies.  So it was Bartolo and not

22  Roque?

23          MR. HERSHAN:  Right.

24          THE COURT:  So you are withdrawing that claim?

25          MR. HERSHAN:  As to that one plaintiff, correct.

1       THE COURT: And it was only made as to that one

2 plaintiff, right?

3       MR. HERSHAN: Well, we made the claim as to

4 Plaintiff Roque. So they were seeking to dismiss the claim, I

5 believe, as to Plaintiff Bartolo when we're not disputing that

6 it should be dismissed as to Plaintiff Bartolo because he

7 doesn't have a recovery equipment cost claim.

8       THE COURT: Oh, I see. Fair enough. I might be

9 mistaken. I'm looking at your -- oh, I see. I think your

10 claim is only as to --

11       MR. HERSHAN: It's as to Roque, Your Honor.

12       THE COURT: So you made that clear, that's right, in

13 your supplemental submission, that you are only bringing it as

14 to Lopez now.

15       MR. HERSHAN: Correct.

16       THE COURT: Docket 28, page three -- that's not

17 right. Maybe I'm reading the wrong page. My mistake. I'm

18 sorry. Page five. You say, Plaintiff Roque is the only

19 plaintiff making the tools of the trade claim. That's what

20 you say on page five.

21       MR. HERSHAN: Correct.

22       THE COURT: So that is consistent with your

23 withdrawal at this point of the claim as to Bartolo.

24       MR. HERSHAN: As to any tools of the trade claim

25 that would apply to Plaintiff Bartolo, that's withdrawn.

1      THE COURT:  So it is an accurate statement that the

2  defense is still moving to dismiss the tools of the trade

3  claim as to Roque?

4      MR. PAPA:  Yes, Your Honor.

5      THE COURT:  Okay.  Do you have any response to that?

6  Because there, I think you are going to have a serious

7  problem, Mr. Hershan.  There is nothing in your complaint that

8  suggests that there is anything special about this equipment

9  that relates to what he does in his work such that it

10 qualifies as tools of the trade.  You literally have mentioned

11 socks, shoes, pants, shirts, and he's a chef and all you say

12 is that he needs special kinds of shoes and socks and pants

13 because he's a chef.

14     MR. HERSHAN:  Well, you do need special shoes in the

15 kitchen.  You need non-slip shoes and that's what he's

16 alleging here, that he had to purchase certain shoes in order

17 to do his job safely working in a pizza kitchen.

18     THE COURT:  Right now, that allegation is not going

19 to be sufficient.  You haven't particularized that at all.

20 Moreover, it is not in your complaint.  It's only in your

21 supplemental briefing so that I cannot consider.

22     The question is whether or not I let you amend.  I

23 mean, this would be your second amendment.  Again, I'm not

24 sure that -- this is a claim, I think, that I am prepared to

25 dismiss certainly as to the shirts, the pants and the hats.  I

1  thought I saw a claim for socks, maybe I'm wrong, but shirts,

2  pants and hats.  Again, all you say in your supplemental

3  briefing which is docket 28 at page five is that he needed

4  particular clothes to withstand the rigors of a kitchen.  That

5  is not suffice because it is not in the complaint and it does

6  not give any specific factual support.  So that claim is going

7  to be dismissed.

8         If you have more on that, something particular about

9  any of those pieces of equipment as you called them, you can

10 move to amend and explain why you should be allowed to amend

11 again on that basis but for now, that claim is going to be

12 dismissed.  So there's no more equipment claim in this case as

13 of now, however, as per my earlier statements, I am going to

14 allow the claims to continue against Dash Miftari and Stevie

15 Miftari.  Let me just put on the record my reasoning on that.

16        First of all, as was mentioned by the defense, the

17 Second Circuit applies an economic realities test for courts

18 to use in evaluating whether the alleged employer or whether

19 the alleged defendant is an employer.

20        The elements of the test were set forth by the

21 defense:  One, did the alleged employer have the power to hire

22 and fire employees; two, did the alleged employer supervise

23 and control the employees' work schedule or conditions of

24 employment; three, did the alleged employer determine the rate

25 and method of payment; and, four, did the alleged employer

1    maintain employment records.  This is from Carter versus

2    Dutchess Community College which was referenced by the

3    defense, 735 F.2d 8, at 12, a Second Circuit case from 1984.

4              While control is an essential aspect of the employer

5    test, such status does not require continuous monitoring of

6    employees, looking over their shoulders at all times, or any

7    sort of absolute control of one's employees.  And that comes

8    from a Second Circuit case, Herman versus RSR Security

9    Services Limited, 172 F.3d 132, at 139, a Second Circuit case

10   from 1999.  Moreover, control may be restricted or only

11   exercised occasionally while still rendering a defendant as an

12   employer.  Again, citing Herman which, in turn, cites Brock

13   versus Superior Care Inc., 840 F.2d 1054, a Second Circuit

14   case from 1988.

15             No one factor in the economic realities test is

16   dispositive and the inquiry into an employment relationship is

17   fact-intensive.  For that, I'm going to cite Barfield versus

18   New York City Health and Hospitals Corporation, 537 F.3d 132,

19   at 141 to 143.

20             And, furthermore, the Second Circuit has

21   consistently reiterated the necessary flexibility of the

22   economic realities test, a flexibility that is needed to

23   ensure that the economic realities test mandated by the

24   Supreme Court is sufficiently comprehensive and flexible to

25   give proper effect to the broad language of the FLSA.  There I

1    am citing <u>De Jesus versus Empire Szechuan Noodle House Inc.</u>,

2    2019 Westlaw 1789901, at page 6, a Southern District of

3    New York decision, April 24, 2019, which, in turn, quotes the

4    <u>Barfield</u> case I mentioned earlier at 537 F.3d 143.

5             To the extent that the defense has argued that

6    plaintiffs' claims are boilerplate, I disagree that they are

7    as boilerplate as the cases cited and relied upon by the

8    defendant, namely, the <u>Shi Meng Chen</u> case discussed earlier

9    and certainly the <u>Coley</u> case which I referenced earlier as

10   well.  In those cases, the pleadings were much more

11   boilerplate and barebones.  There was another case, the

12   <u>Apolinar</u> case that we discussed earlier.  Those were very

13   different circumstances in my mind and very distinguishable,

14   especially <u>Apolinar</u> was a case involving a group of corporate

15   defendants where there was an allegation that they were joint

16   employers that operated as a single integrated enterprise.  So

17   I think that is quite different here than where we are talking

18   about two pizza parlors that are owned, it appears, by three

19   individuals and operated by them.  In the case of <u>Shi Meng</u>

20   <u>Chen</u>, the allegations were more boilerplate and as to one of

21   the defendants, the only factual allegation was that she was

22   referred to as "Lady Boss."

23            Here, I find, in contrast, the plaintiffs have

24   provided some detailed allegations albeit, as I said before,

25   not nearly as detailed as they really ought to be to fend off

1  such a motion.

2        As to defendant Stevie Miftari, the plaintiffs have

3  alleged that he hired them, he set their pay rates, he

4  instructed them on how to perform their work, he had the power

5  to fire and discipline them and he possessed operational

6  control and an ownership interest in the Pronto Pizza parlor.

7        With respect to Dash Miftari, as we discussed, the

8  allegations are that he came to the Pronto Pizza locations two

9  to three times a week, that he issued orders to the

10  plaintiffs, that he represented himself as an owner of Pronto

11  Pizza, that he had the power to fire and discipline plaintiffs

12  and that he possessed operational control and an ownership

13  interest in the Pronto Pizza chain or chain if you want to

14  call it that.

15        I do find that I can make the reasonable inference

16  that the defendants were plaintiffs' employers under the

17  relative standards that I have just recited.  In addition,

18  I'll cite Compagnone versus MJ Licensing Company, 2019 Westlaw

19  1953931, at page three, a Southern District of New York

20  decision from May 2, 2019.  There, the Court similarly found

21  that while some of the language is boilerplate, at this stage,

22  the allegations in plaintiffs' complaint need only be

23  plausible and the Court simply must be able to make a

24  reasonable inference that defendants were plaintiffs'

25  employers and that's what I do find here.

1    As I said before, the equipment cost claim of
2 plaintiff Roque Lopez is being dismissed and to recite some of
3 the standards there, a uniform to qualify as a tool of the
4 trade must be specifically required for the performance of the
5 employers' particular work.  That comes from 29 CFR
6 Section 531.35.  And cannot, therefore, consist of ordinary
7 wardrobe items, citing Cocoletzi versus Fat Sal's Pizza II
8 Corp., 2019 Westlaw 92456, at page 7, Southern District of
9 New York, January 3, 2019.  Likewise, New York law excludes
10 from the definition of a uniform any clothing that may be worn
11 as part of an employee's ordinary wardrobe.  There I will cite
12 12 NYCRR Section 146-3.10.  New York law defines "ordinary
13 wardrobe" as basic street clothing selected by the employee
14 where the employer permits variations in details of dress.
15 12 NYCRR Section 146-3.10 again.
16    So when a plaintiff seeks to claim that his work
17 clothing is a tool of the trade, courts require the plaintiff
18 to plead facts that suggest whether and why the particular
19 items were required for the plaintiff's work, citing Hernandez
20 versus Spring Rest Group LLC -- and forgive me folks, I'm
21 going to recite a few cases for the record -- 2018 Westlaw
22 3962832, at page 4, Southern District of New York, August 17,
23 2018.  Cocoletzi, the same case I cited earlier, versus Fat
24 Sal's Pizza, 2019 Westlaw 92456, at page 7.  Then Gunan Ming
25 Lin versus Benihana National Corp., 755 F.Supp.2d 504, at 512,

1    Southern District of New York, 2010.

2            Here, as I said before, the plaintiffs did not

3    include anything in their amended complaint explaining how

4    Roque Lopez's six shirts, eight pairs of pants, 30 pairs of

5    shoes and 30 hats qualified as special clothing or equipment

6    that he had to wear in his capacity as a chef at the

7    defendants' pizza parlor.  Only in the supplemental briefing

8    did the plaintiffs include what I have characterized as a

9    conclusory claim that Roque Lopez needed to purchase

10   particular clothes to withstand the rigors of a kitchen, but

11   because this allegation does not appear in the amended

12   complaint, I have not considered it and cannot consider it.

13           For that, I will cite In Re Agape Litigation,

14   773 F.Supp.2d 298, at 316, an Eastern District of New York

15   case from 2011, which stated that it is well settled that a

16   plaintiff cannot amend the complaint through briefs and

17   affidavits and such facts are thus irrelevant for purposes of

18   determining whether the plaintiff's complaint should be

19   dismissed for failure to state a claim.

20           So, I conclude that Mr. Roque Lopez's claim for

21   equipment costs must be dismissed for failure to state a

22   claim.

23           As I mentioned earlier, if, for some reason, the

24   plaintiff feels that they can make more particularized factual

25   allegations to support that equipment or tools of the trade

1   claim, they can move to amend and they will have to set forth

2   the grounds for why they should be allowed to as a second

3   amended complaint.

4           All right.  So those are my rulings on this and I

5   think that resolves the pending motion to dismiss.

6           The parties obviously should move forward with

7   discovery, if you have not already.  I am assuming you have

8   since this is a 2018 case.  Is that correct?  I haven't

9   checked the docket, but have you met yet with the

10  Magistrate Judge for an initial conference?

11          MR. TUROFF:  No, we have not, Judge.

12          THE COURT:  So the Judge obviously will set one up.

13  That's Judge Scanlon.

14          MR. TUROFF:  Excuse me, Judge.  As it relates

15  specifically to the allegations on Dash and Stevie, we

16  understand your ruling.  We would -- we wondered if you would

17  consider, I mean, given the fact that the -- obviously, the

18  whole point in the complaint in the first place is to give

19  notice of allegations against the defendants and I think we

20  all recognize that, obviously, even though this may be close

21  to the line, that there is obviously some question as to

22  whether or not there is sufficient particularity.

23          We would ask you to consider ordering plaintiffs to,

24  in fact, file a second amended complaint to amplify the

25  allegations specifically as it relates to Dash and Stevie

1  Miftari only.

2       THE COURT:  All right.  I think that's not an

3  unreasonable suggestion.  Obviously there are other ways to

4  achieve that through discovery or statements that you could

5  demand, but I think because, as I said, this should be about

6  improving the practice as well or policing it, I am going to

7  grant that request.

8       So, Mr. Hershan, how long would you need to file an

9  amended complaint that does beef up and provide more

10 particular allegations as to both of those defendants?

11      MR. HERSHAN:  I'm going to be out of town next week

12 and some the week after.  If I can have three weeks, is that

13 sufficient?

14      THE COURT:  All right.  I will give you three weeks

15 to do that.  So that is --

16      THE CLERK:  July 31st.

17      THE COURT:  -- July 31st.  So you have until the end

18 of the month to do that.  Then I will let Judge Scanlon know

19 that she can have you come in soon thereafter to begin the

20 pretrial process.  Okay?

21      All right.  Thank you, everyone.  I appreciate your

22 argument.

23      MR. HERSHAN:  Thank you, Judge.

24      (Matter concluded.)

25